IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Valerie Sue Jester,                         :
                      Plaintiff             :      Civil Action 2:13-cv-00376

            v.                              :      Judge Marbley

Carolyn W. Colvin,                          :      Magistrate Judge Abel
Commissioner of Social Security,
                      Defendant             :

**REPORT AND RECOMMENDATION**

Plaintiff Valerie Sue Jester brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** Jester maintains that she is disabled as a result of obesity, plantar fasciitis, calcaneal spur, gastroesophageal reflux disease (GERD), hypertension, history of headaches, bipolar disorder, attention deficit disorder, and anxiety. The administrative law judge concluded that plaintiff could perform a range of sedentary work.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to follow the treating physician rule; and,
- The administrative law judge failed to properly evaluate plaintiff's credibility.

**Procedural History.**  Plaintiff Valerie Sue Jester filed her application for disability insurance benefits on September 8, 2009, alleging that she became disabled on September 25, 2000, at age 25, by bipolar disorder, depression, anxiety, plantar fasciitis, and scoliosis.  (R. 178-80, 205.)  She later amended the application to allege disability as of September 8, 2009, when she was 34 years old. The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On October 14, 2011, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 34.)  A vocational expert also testified.  On November 25, 2011, the administrative law judge issued a decision finding that Jester was not disabled within the meaning of the Act.  (R. 25.)  On February 19, 2013, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 1-3.)

**Age, Education, and Work Experience.**  Valerie Sue Jester was born July 24, 1975.   (R. 178.) She has a high school education.  (R. 213.)  She has worked as a cashier, a waitress, a housekeeper, a sales associate and a slicer at a factory. She  last worked January 23, 2002.  (R. 206-05.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized 's testimony as follows:

> At hearing, the claimant testified she spends most of the day in bed due to the symptoms of her mental impairments. She also testified she experiences decreased appetite due to medication side effects and

2

depression. (Hearing Testimony.) In an October 2009 <u>Function Report</u>, the claimant described loss of motivation to perform household chores such as clearing and washing laundry. (Exhibit B4E.) However, the claimant has no problems performing personal care tasks, such as dressing, bathing, and shaving. (Exhibit B4E, Hearing Testimony.) At hearing, the claimant also testified that she enjoys hobbies such as sewing, arranging flowers, and other craft projects. . . .

[T]he claimant said she isolates herself and does not spend time with others. . . . [T]he claimant said she is able to lift up to 20 pounds, sit for 30 minutes at one time, and stand for 30 minutes at one time. . . .

[S]he testified she is able to mow her lawn, pick-up sticks, and do other yard work for up to 45 minutes at one time.

(R. 18, 20, 22.)

**Medical Evidence of Record.**

**Physical Impairments.**

<u>Penelope A. Halliday, M.D.</u> On June 9, 2003, Jester began receiving treatment from Dr. Halliday, a family practitioner. (R. 296.) Dr. Halliday treated plaintiff for depression, anxiety, bipolar disorder, GERD, and hypertension. (R. 299.)

<u>Cindi Hill, M.D.</u> On November 4, 2009, Dr. Hill, a state agency reviewing physician, completed a physical residual functional capacity assessment. Dr. Hill concluded that plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds. She could stand about 6 hours in an 8-hour day. She could sit for 6 hours in an 8-hour day. She was unlimited in her ability to push and/or pull. Dr. Hill noted that as of July 2009, plaintiff reported pain in the plantar surface of both feet when walking and tenderness at the insertion of the plantar's fascia. It was recommended that she stretch,

use inserts and NSAIDs. She had a normal gait and station. She experienced numbness on and off in her hands when using the computer, holding a hair dryer, and driving.

Dr. Hill opined that plaintiff could occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds. She could occasionally balance. She should avoid concentrated exposure to vibration or hazards such as machinery or heights.

Dr. Hill indicated that plaintiff was diagnosed with obesity, plantar fasciitis, scoliosis, hypertension, GERD, and CTS. She complained of body aches and always being tired. (R. 561-68.)

Robert Fierman, D.P.M. On October 9, 2009, Dr. Fierman began treating plaintiff for plantar fasciitis bilaterally, greater on the left. (R. 846.) On October 19, 2009, plaintiff reported persistent pain and that stretching and wearing orthotics had not provided any improvement.

A December 2, 2009 MRI of the left ankle showed minimal ankle joint effusion, minimal edema in the soft tissues adjacent to the calcaneal attachment of the plantar fascia, and some marrrow edema consistent with plantar fasciitis. (R. 850.)

On December 4, 2009, Dr. Fierman completed a lower extremities impairment questionnaire. (R. 837-44.) Dr. Fierman diagnosed plantar fasciitis and stabbing pain in the Achilles tendon. Her prognosis was poor based on her poor response to treatment. Clinical findings included tenderness of the Achilles tendon with dorsiflexion and pain with inversion and eversion; muscle spasms in the sole of the left foot; swelling; joint warmth; joint instability; abnormal gait with pain when walking; positive straight leg

4

raising test bilaterally to 20 degrees; pain with pressure, walking, standing and sitting. (R. 837-38.) She experienced constant pain. Her weight contributed to her pain. Dr. Fierman opined that plaintiff could independently initiate and sustain ambulation and complete activity. Although he noted that plaintiff required assistance walking, she did not need a cane or a walker. Dr. Fierman indicated that pain interfered with her ability to ambulate effectively. Plaintiff could not effectively climb stairs without the help of a handrail. She could not carry out activities of daily living independently without assistance.

Dr. Fierman opined that plaintiff could sit or stand/walk for less than one hour. Plaintiff must get up and move around every hour and must wait an hour prior to sitting again. She could frequently lift and carry up to 5 pounds. She could frequently carry up to ten pounds and occasionally lift up to ten pounds. She could occasionally carry up to 20 pounds. (R. 841.)

Plaintiff required her legs to be elevated for 30 minutes 3-4 times per day because of her edema. Dr. Fierman opined that plaintiff could only tolerate low stress work based on her anxiety attacks. She required unscheduled breaks to rest at unpredictable intervals during the day every ten minutes. (R. 842-43.)

Dr. Fierman opined that plaintiff had psychological limitations. She needed to avoid wetness, noise, fumes, gases, temperature extremes, humidity, dust, and heights. She could not push, pull, kneel, bend or stoop.

John A. Mehnert, M.D. On September 9, 2010, Dr. Mehnert began treating

5

plaintiff for calcaneal spur and plantar fasciitis. Plaintiff described a history of Cortisone injections and physical therapy. (R. 1119.) On April 20, 2010, examination revealed pain with palpation of the plantar fascia on the left. Plaintiff received an injection. (R. 1122-23.) On June 1, 2010, plaintiff continued to report pain, and Dr. Mehnert prescribed orthotics. (R. 1126-27.)

On September 9, 2010, Dr. Mehnert completed a lower extremities impairment questionnaire. He noted that her prognosis was good. Plaintiff had tenderness in the heels and reported throbbing pain. Excessive walking or standing lead to pain. Plaintiff reported that the pain was constant. Although she could independently initiate ambulation and complete activity, he noted that it was questionable as to whether she could sustain ambulation. She did not require a device or assistance to walk. Pain did interfered with her ability to ambulate effectively, and she could not effectively climb stairs without the help of a handrail. Although Dr. Mehnert indicated that she could not carry out activities of daily living independently without assistance, she could travel to and from her house, prepare meals, and bathe and dress. Dr. Mehnert had not been able to completely relieve plaintiff's pain with medication. Dr. Mehnert opined that plaintiff could sit for 8 hours in a day. She could only stand or walk for less than 1 hour. Dr. Mehnert opined that plaintiff could occasionally lift over 50 pounds and frequently carry 5-10 pounds. Dr. Mehnert further opined that plaintiff would likely be absent from work more than three times a month. (R. 1110-17.)

On November 4, 2010, plaintiff reported ongoing foot pain, although Dr.

6

Mehnert found her somewhat improved .(R. 1156-57.) On May 5, 2011, plaintiff reported worsening pain, and Dr. Mehnert diagnosed left metatarsalgia. (R. 1256.) On August 11, 2011, plaintiff had pain at the insertion site of the left plantar fascia and in the tarsal tunnel. Dr. Mehnert diagnosed tarsal tunnel syndrome and worsening calcaneal spur and plantar fasciitis. (R. 1258-59.)

On October 17, 201, plaintiff underwent release surgery of her tarsal tunnel and plantar fascia on the left. (R. 1270-71.)

Neil Ghany, M.D. On January 14, 2011, Dr. Ghany, an orthopedic surgeon, evaluated plaintiff for recurrent carpal tunnel symptoms. Examination revealed some stiffness of the right wrist and positive Tinel's. (R. 1188-89.) On February 11, 2011, plaintiff underwent right carpal tunnel release surgery. (R. 1215.)

**Psychological Impairments.**

Susan Wolfe, Ph.D. On January 4, 2005, Dr. Wolfe, a licensed psychologist, began treating plaintiff for a mood disorder and frequent panic attacks. (R. 389.)

In a May 26, 2009 Individual Service Plan, Dr. Wolfe assigned plaintiff a Global Assessment of Functioning ("GAF") score of 60. (R. 390.) Dr. Wolfe noted that plaintiff enjoyed crafts and cake decorating. (R. 391.)

In June 2008, plaintiff reported discomfort being in stores. (R. 403.) Much of Dr. Wolfe's treatment notes focused on plaintiff's plans on divorcing her husband and reconciling with her former husband. (R. 402-08.)

In November 2008, plaintiff was excited about her decision to pursue a college

education. (R. 402.) In January 2009, plaintiff was enjoying college correspondence coursework (R. 400), although she dropped out by April.  (R. 397.) In April 2009, plaintiff experienced a resurgence of anxiety. *Id.* On August 18, 2009, Dr. Wolfe noted that plaintiff's mood was enhanced and her functioning had improved. Plaintiff reported that she seeing Dr. Dipka Shah, a psychiatrist, had been beneficial. (R. 395.) In September 2009, plaintiff's mood seemed better although she was dealing with a number of medical problems. (R. 394.) On October 20, 2009, plaintiff reported episodes of irritability, "flying of the handle, " and suicidal ideation. (R. 393.)

In an October 26, 2009 letter, Dr. Wolfe stated her opinion that plaintiff was too unstable to sustain concentration and performance duties affiliated with employment. Her prognosis was guarded. (R. 389.)

On December 11, 2009, Dr. Wolfe completed a psychiatric/psychological impairment questionnaire.  (R. 614-21.) Dr. Wolfe diagnosed a mood disorder and anxiety disorder and assigned a GAF score of 55-60. Plaintiff's prognosis was fair. Clinical findings included poor memory, sleep disturbance, mood disturbance, emotional lability, recurrent panic attacks, anhedonia, paranoia, difficulty concentrating, past suicidal ideation, social withdrawal or isolation, decreased energy, intrusive recollections, generalized anxiety, and irritability. (R. 615.)

With respect to understanding and memory, Dr. Wolfe opined that plaintiff was markedly limited in her abilities to remember locations and work-like procedures; understand and remember one or two step instructions; and understand and remember

8

detailed instructions. With respect to sustained concentration and persistence, Dr. Wolfe opined that plaintiff was markedly limited in her abilities to carry out simple one or two step instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; sustain ordinary routine without supervision; work in coordination with or proximity to others without being distracted by them; make simple work related decisions; and complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. With respect to social interaction, plaintiff was markedly limited in her abilities to accept instructions and respond appropriately to criticism from supervisors and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Plaintiff was moderately limited in her abilities to interact appropriately with the general public; ask simple questions or request assistance; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness. With respect to adaptation, plaintiff was markedly limited in her ability to respond appropriately to changes in the work setting; travel to unfamiliar places or use public transportation; and set realistic goals or make plans independently. She was moderately limited in her ability to be aware of normal hazards and to take appropriate precautions.

Dr. Wolfe indicated that plaintiff experienced episodes of deterioration or decompensation in work like settings. (R. 618-19.) Dr. Wolfe concluded that plaintiff

9

was incapable of even low stress work due to her history of significant mood fluctuations and anxiety. (R. 620.) Dr. Wolfe opined that plaintiff would likely be absent from work more than three times a month due to her impairments. (R. 621.)

On March 4, 2010, Dr. Wolfe completed a mental status questionnaire and daily activities questionnaire at the request of the Bureau of Disability Determination. Dr. Wolfe referred to her treatment notes for the answers to many questions. Dr. Wolfe opined that plaintiff would react poorly to pressures in a work setting that involved simple and routine or repetitive tasks. She noted that plaintiff was able to prepare food and take care of her personal hygiene. She liked to decorate cakes. She could perform household chores, shop and pay bills with the assistance of her significant other. (R. 604-08.)

On March 31, 2010. Plaintiff exhibited decreased function since her last visit and reported increased foot pain. (R. 1059.) On April 27, 2010, plaintiff reported increased symptoms of anxiety and depression. She was tearful. She had recently been diagnosed with attention deficit disorder and had started taking Vyvanse. (R. 1058.) On November 23, 2010, plaintiff reported increased depression. (R. 1182.) She continued to deal with depression through October 2011. (R. 1254.)

Joan Williams, Ph.D. On October 30, 2009, Dr. Williams, a state agency reviewing psychologist, completed a mental residual functional capacity assessment and psychiatric review technique. (R. 543-60.) Dr. Williams adopted the mental residual functional capacity of the January 24, 2008 decision of the administrative law judge. (R.

10

545.) She concluded that plaintiff had major depressive disorder and bipolar disorder. (R. 550.) She also noted that plaintiff was diagnosed with post-traumatic stress disorder and panic disorder. (R. 552.)

Vicki Warren, Ph.D. On March 15, 2010, Dr. Warren, a state agency reviewing psychologist, reviewed the evidence of record and the October 30, 2009 assessment was affirmed as written. Dr. Warren did not give controlling weight to the December 11, 2009 opinion of Dr. Levy because subsequent records from Dr. Shah indicated that plaintiff's mental status examination was normal and that she tolerated her medications well. She slept well, her cognition was intact, and her mood was good. There was no psychomotor abnormalities. Her thinking was coherent. (R. 1039.)

**Administrative Law Judge's Findings.**

1.     The claimant has not engaged in substantial gainful activity since September 4, 2009, the application date (20 CFR 416.971 *et seq.*).

2.     The claimant has the following severe combination of impairments: obesity, plantar fasciitis, calcaneal spur, gastroesophageal reflux disease (GERD), hypertension, history of headaches, bipolar disorder, attention deficit disorder (ADD), and anxiety. (20 CFR 416.920(c)).

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work, with the ability to lift up to 50 pounds occasionally and carry 5 to 10 pounds occasionally, to stand and/or walk one hour in an eight-hour workday, and to sit eight

hours in an eight-hour workday. The claimant also has the following non-exertional limitations: never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally stoop, kneel, and crouch; avoid concentrated exposure to vibrations, operational control of moving machinery, and unprotected heights; limited to simple, routine, and repetitive tasks in a low stress job requiring only occasional decision making and occasional changes in the work setting; limited to less than occasional interaction with the public; and limited to occasional interaction with coworkers and supervisors.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on July 24, 1975 and was 34 years old, which is defined as a younger individual age, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82041 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 4, 2009, the date the application was filed (20 CFR 416.920(g)).

(R. 17-25.)

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**   Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to follow the treating physician rule. Here, the administrative law judge gave significant weight to the opinion of Dr. Mehnert, plaintiff's treating podiatrist, but he did not indicate what, if any, weight he gave to the earlier treating podiatrist, Dr. Fierman. Plaintiff argues that the administrative law judge erred by not adopting all of the limitations identified by Dr. Mehnert, including his conclusion that plaintiff could stand/walk for less than 1 hour in an 8-hour day. Dr. Mehnert also concluded

that plaintiff would be absent from work more than three times a month due to her impairments or treatment. Plaintiff maintains that the administrative law judge cannot pick and choose only the evidence support his conclusion and ignore the rest of the opinion despite purporting to credit the entire opinion of Dr. Mehnert. The administrative law judge also gave minimal weight to plaintiff's treating psychologist, Dr. Wolfe on the basis that her opinion was inconsistent with her notes indicating that plaintiff improved with treatment. The administrative law judge also noted that Dr. Wolfe's opinion that plaintiff experienced episodes of decompensation was not supported by the record. Even if the opinion of Dr. Wolfe was not entitled to controlling weight, the administrative law judge was required to consider the factors provided in 20 C.F.R. 404.1527 to determine what weight it should be accorded. The administrative law judge failed to identify any specific evidence to support his conclusions with respect to plaintiff's mental limitations.

- The administrative law judge failed to properly evaluate plaintiff's credibility. Plaintiff argues that the administrative law judge erred in concluding that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with her residual functional capacity. Plaintiff argues that the administrative law judge applied the wrong legal standard because plaintiff's statements should have been evaluated for the consistency with the evidence of record,

14

not the residual functional capacity evaluation formulated by the

administrative law judge.

**Analysis.**  Treating Doctor: Legal Standard.  A treating doctor's opinion[1] on the

issue of disability is entitled to greater weight than that of a physician who has

examined plaintiff on only one occasion or who has merely conducted a paper review of

the medical evidence of record.  20 C.F.R. § 404.1527(d)(1).  *Hurst v. Schweiker*, 725 F.2d

53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048,

1054 (6th Cir. 1983).  The Commissioner's regulations explain that Social Security

generally gives more weight to a treating doctors' opinions because treators are usually

"most able to provide a detailed, longitudinal picture" of the claimant's medical

impairments. 20 C.F.R. § 404.1527(d)(2).  When the treating doctor's opinion "is well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is

---

[1]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2). Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2. When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.*, the error is *de minimus*. *Wilson*, 378 F.3d at 547. So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 1527(d)(2) but does not technically meet all its requirements. *Id. See, Gayheart v. Commissioner of Social Security,* 710 F.3d 365, 38o (6th Cir. 2013).

not inconsistent with the other substantial evidence in your case record" the
Commissioner "will give it controlling weight. " *Id.*

Even though a claimant's treating physician may be expected to have a greater
insight into his patient's condition than a one-time examining physician or a medical
adviser, Congress specifically amended the Social Security Act in 1967 to provide that to
be disabling an impairment must be "medically determinable." 42 U.S.C. §423(d)(1)(A).
Consequently, a treating doctor's opinion does not bind the Commissioner when it is
not supported by detailed clinical and diagnostic test evidence. *Warner v. Commissioner
of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); *Varley v. Secretary of Health and Human
Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.
1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*,
558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and
404.1527(a)(1)[2].

The Commissioner's regulations provide that she will generally "give more
weight to the opinion of a source who has examined you than to the opinion of a source
who has not examined you." 20 C.F.R. § 404.1527(d)(1).  When a treating source's

---

[2]Section 404.157(a)(1) provides:
You can only be found disabled if you are unable to do any substantial
gainful activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not less than 12
months. See §404.1505. Your impairment must result from anatomical,
physiological, or psychological abnormalities which are demonstrable by
medically acceptable clinical and laboratory diagnostic techniques. See
§404.1508.

opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  20 C.F.R. § 404.1527(d)(2).

When the treating source's opinion is well-supported by objective medical evidence and is not inconsistent with other substantial evidence, that ends the analysis. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p[3]. *Gayheart v. Commissioner of Social Security,* 710 F.3d 365, 375 (6th Cir. 2013). The Commissioner's regulations require decision-makers "to provide 'good reasons' for discounting the weight given to a treating-source opinion. [20 C.F.R.] § 404.1527(c)(2)."[4] *Gayheart,* 710 F.3d at 375.

The Commissioner has issued a policy statement, Social Security Ruling 92-6p, to guide decision-makers' assessment of treating-source opinion. It emphasizes:

1.  A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2.  Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.,* opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3.  Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

_____

[3]Social Security Ruling 96-2p provides, in relevant part:

. . .

6.  If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.,* it must be adopted.

[4]Section 404.1527(c)(2) provides, in relevant part: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

4. Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5. The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

The focus at this step is solely on whether the treating-source opinion is well-supported by objective medical evidence and not inconsistent with other substantial evidence. In making this determination the factors for assessing the *weight* to give to the medical opinions of any medical source, 20 C.F.R. § 404.1527(c), are not used. These come into play only when there are good reasons not to give the treating-source opinion controlling weight.  20 C.F.R. § 404.1527(c)(2)[5]; *Gayheart,* above,710 F.3d at 376, 2013 WL

---

[5]Section 404.1527(c)(2) provides, in relevant part:
 If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. *When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(I) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion*

896255, *10.

If there are good reasons to find that the treating-source opinion is not controlling, then the decision-maker turns to evaluating all the medical source evidence and determining what weight to assign to each source, including the treating sources[6]. The Commissioner's regulations require the decision-maker to considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision.  20 C.F.R. § 404.1527(c)(1) through (6). Subject to these guidelines, the Commissioner is the one responsible for determining

---

(Emphasis added.)

[6]Even when the treating source-opinion is not controlling, it may carry sufficient weight to be adopted by the Commissioner:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p.

whether a claimant is disabled.  20 C.F.R. § 404.1527(e).

The case law is consistent with the principals set out in Social Security Ruling 96-2p.  A broad conclusory statement of a treating physician that his patient is disabled is not controlling.  *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis."  *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them."  *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *5; *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242 (6th Cir. 2007). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).Moreover, the conflicting substantial evidence "must consist of more than the medical opinions of nontreating and nonexamining doctors." *Gayheart*, 710 at 377. Even when the Commissioner determines not to give a treator's opinion controlling weight, the decision-maker must evaluate the treator's opinion using the factors set out in 20 C.F.R. § 404.1527(d)(2).  *Wilson,* 378 F.3d at 544;

*Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir. 2009). There remains a rebuttable

presumption that the treating physician's opinion "is entitled to great deference." *Rogers*

*v. Commissioner of Social Security,* 486 F.3d at 242; *Hensley*, above. The Commissioner

makes the final decision on the ultimate issue of disability. *Warner v. Commissioner of*

*Social Security,* 375 F.3d at 390; *Walker v. Secretary of Health & Human Services,* 980 F.2d

1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847,

855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954,

958 n.1 (11th Cir. 1982).

<u>Treating Doctor: Discussion</u>.  With respect to Dr. Mehnert, the administrative law

judge stated:

> In a September 2010 statement submitted by the claimant's attorney, Dr.
> Mehnert said the claimant is limited to sitting for eight hours in an eight-
> hour workday and standing up to one hour in an eight-hour workday. He
> also said the claimant should be limited to lifting up to 50 pounds
> occasionally and carrying up to 10 pounds occasionally. Further, Dr.
> Mehnert stated that the claimant does not need to elevate her feet
> throughout the workday. (Exhibit B23F.) Mehnert also has a longstanding
> treatment relationship with the claimant. Therefore, his opinions
> regarding the claimant's ability to function has been given significant
> weight. . . .

(R. 22.)  It is the role of the administrative law judge to formulate the residual functional

capacity. As a result, the administrative law judge did not err when he failed to

incorporate all of the limitations identified by Dr. Mehnert. Specifically, Dr. Mehnert

opined that plaintiff would miss more than three days of work per month, and this

opinion was not given weight by the administrative law judge.

With respect to Dr. Wolfe, the administrative law judge stated:

> In an October 2009 statement, Dr. Wolfe said she does not believe the
> claimant is capable of working. (Exhibit B5F/6.) However, this is an issue
> reserved for the Commissioner. (20 CFR 416.927(e), SSR 96-5p.) In a
> December 2009 assessment, Dr. Wolfe said the claimant's symptoms
> would be exacerbated by work and that the claimant is incapable of
> performing even "low stress" work. She also opined that the claimant
> would be expected to miss more than three days each month. Further, Dr.
> Wolfe noted "marked" limitations in multiple areas. (Exhibit B12F/13-20.)
> She reaffirmed this opinion in a more recent October 2011 statement.
> (B33F.) However, these opinions are not well supported by the mental
> health treatment notes, which, as discussed above, indicate the claimant's
> symptoms are improved with treatment. Additionally, in December of
> 2009, Dr. Wolfe assigned the claimant Global Assessment of Functioning
> score of 60, indicative of only moderate symptoms or moderate limitations
> in social or occupational functioning. (Exhibit B12F/13-20.) This is
> inconsistent with the multiple "marked" limitations also noted in the
> assessment. Finally, in her most recent statement, Dr. Wolfe said the
> claimant "experiences episodes of deterioration or decompensation in
> work or work-like settings." (Exhibit B33F.) However, the claimant has not
> performed any work activity since she began seeing Dr. Wolfe in 2005.
> Further, the record contains no evidence of any episodes of
> decompensation to support this statement. Given these factors, the
> undersigned has given Dr. Wolfe's statements only minimal weight in
> determining the claimant's mental abilities and limitations.

(R. 23.) The administrative law judge properly considered the limitations identified by

Dr. Wolfe. The administrative law judge reviewed the "marked" limitations found by

Dr. Wolfe and concluded that these limitations were not supported by her treatment

notes. The limitations were also inconsistent with her GAF score of 60. The record did

not contain any evidence indicating that plaintiff experienced episodes of

decompensation. As a result, the administrative law judge gave sufficient reasons for

rejecting Dr. Wolfe's opinion.

22

The Commissioner maintains that the administrative law judge considered all opinion evidence of record, which would include the opinion of Dr. Fierman and that the administrative law judge was not required to cite that opinion in his decision.

In reviewing the medical evidence of record, the administrative law judge made one reference to the treatment records of Dr. Fierman. In doing so, however, he did not specifically identify Dr. Fierman by name or refer to his conclusions. Rather, he stated, "she cancelled or failed to show up for nearly half of her prescribed sessions. (Exhibit B15F/5.)". (R. 22.) Despite the Commissioner's reliance on the administrative law judge's statement that he considered all opinion evidence, I cannot say that the administrative law judge gave good reasons for not adopting Dr. Fierman's opinion because he failed to provide any explanation for what weight, if any, was accorded his opinion. As a result, I recommend that this case be remanded to allow the administrative law judge to consider Dr. Fierman's opinion.

Credibility Determination. Pain is an elusive phenomena.  Ultimately, no one can say with absolute certainty whether another person's subjectively disabling pain and other symptoms preclude all substantial gainful employment.  The Social Security Act requires that the claimant establish that he is disabled.  Under the Act, a "disability" is defined as "inability to engage in any substantial gainful activity *by reason of any medically determinable or mental impairment* which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §423(d)(1)(A) (emphasis added).

23

Under the provisions of 42 U.S.C. §423(d)(5)(A), subjective symptoms alone cannot prove disability. There must be objective medical evidence of an impairment that could reasonably be expected to produce disabling  pain or other symptoms :

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.  Objective medical evidence of pain or other symptoms established by medically acceptable clinical or other laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

The Commissioner's regulations provide a framework for evaluating a claimant's symptoms consistent with the commands of the statute:

> (a)  *General*.  In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  By objective medical evidence, we mean medical signs and laboratory findings as defined in §404.1528(b) and (c).  By other evidence, we mean the kinds of evidence described in §§404.1512(b)(2) through (6) and 404.1513(b)(1), (4), and (5) and (e).  These include statements or reports from you, your treating or examining physician or psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work and any other

evidence showing how your impairment(s) and any related symptoms affect your ability to work. We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work. However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you. (Section 404.1527 explains how we consider opinions of your treating source and other medical opinions on the existence and severity of your symptoms, such as pain.) We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

20 C.F.R. §404.1529(a). A claimant's symptoms will not be found to affect his ability to work unless there is a medically determinable impairment that could reasonably be expected to produce them. 20 C.F.R. § 404.1529(b). If so, the Commissioner then evaluates the intensity and persistence of the claimant's pain and other symptoms and determines the extent to which they limit his ability to work. 20 C.F.R. § 404.1529(c). In making the determination, the Commissioner considers

all of the available evidence, including your history, the signs and

25

> laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your symptoms affect you. We also consider the medical opinions of your treating source and other medical opinions . . . .

*Id.*

In this evaluation of a claimant's symptoms, the Commissioner considers both objective medical evidence and "any other information you may submit about your symptoms." 20 C.F.R. § 404.1529(c)(2). The regulation further provides:

> Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions which you, your treating or nontreating source, or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether you are disabled. We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons. Section 404.1527 explains in detail how we consider and weigh treating source and other medical opinions about the nature and severity of your impairment(s) and any related symptoms, such as pain. Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (I) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). When determining the extent to which a claimant's

symptoms limit his ability to work, the Commissioner considers whether the claimant's

statements about the symptoms is supported by or inconsistent with other evidence of

record:

In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4).

SSR 96-7p explains the two-step process established by the Commissioner's regulations

for evaluating a claimant's symptoms and their effects:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical

and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. . . .

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate

pain or other symptoms;

5. Treatment, other than medication, the individual receives
or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses
or has used to relieve pain or other symptoms (e.g. lying
flat on his or her back, standing for 15 to 20 minutes every
hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional
limitations and restrictions due to pain or other symptoms.

Case law interpreting the statute and regulations. At the outset, it is important to

keep in mind that symptoms are the claimant's "description of [his/her] physical or

mental impairment."  20 C.F.R. § 404.1528(a). Inevitably, evaluating symptoms involves

making credibility determinations about the reliability of the claimant's self-report of

his symptoms. *Smith ex rel E.S.D. v. Barnhart*, 157 Fed.Appx. 57, 62 (10th Cir. December.

5, 2005) (not published)("Credibility determinations concern statements about symp-

toms.")

"Where the symptoms and not the underlying condition form the basis of the

disability claim, a two-part analysis is used in evaluating complaints of disabling pain."

*Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (2007); SSR 96-7p, 1996 WL 374186

(July 2, 1996). That test was first set out in *Duncan v. Secretary of Health and Human*

*Services*, 801 F.2d 847, 853 (6th Cir. 1986). First, the Court must determine "whether there

is objective medical evidence of an underlying medical condition."  If so, the Court must

then

> examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan*, 801 F.2d at 853. Any "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers,* 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir.1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir.1981)). The ALJ is required to explain her credibility determination in her decision, which "'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *See id.* (quoting SSR 96-7p). Furthermore, the ALJ's decision must be supported by substantial evidence. *Rogers,* 486 F.3d at 249.

        Discussion of ALJ's credibility determination. Plaintiff argues that the administrative law judge used boilerplate language in making his credibility determination that other courts have specifically rejected. *See Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012). The language in question is " the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (R. 20.) The administrative law judge's analysis did not end there. The administrative law judge further stated:

The objective medical evidence partially supports the claimant's allegations. For example, a December 2009 MRI of the claimant's left ankle was significant for minimal edema in the soft tissues adjacent to the plantar fascia and minimal marrow edema in the adjacent calcaneal tuberosity, indicative of a minimal degree of plantar fasciitis. (Exhibit B11F/20.) X-rays of the heel also show moderate spurring of the heal, and she has received steroid injections in the left foot. (Exhibit B24F/2-5.) Additionally, the claimant recently underwent tarsal tunnel release of the left foot and plantar fascial release of the left foot in an attempt to lessen the symptoms associated with these conditions. (Exhibit B34F/16.) She also has a history of headaches and has been diagnosed with GERD and hypertension, which require medications and ongoing medical monitoring. (Exhibits B1F, B27F, B29F.) Further, with a body mass index over 40, the claimant is obese, which likely exacerbates the symptoms of her physical impairments. (Exhibit B32F/5.)

The mental health treatment notes also support some of the claimant's allegations. For example, the claimant has a long history of ADD, anxiety, and bipolar disorder. (Exhibits B1F, B3F, B5F, B14F, B18F.) Treatment notes also document complaints of irritability, anxiety attacks, and difficulty completing tasks. (Exhibits B5F, B27F, B29F.) Prior to the amended alleged onset date, the claimant also sought emergency room treatment for chest tightness related to anxiety. (Exhibit B1F/21.)

However, the overall weight of the evidence does not support a finding of disability. Specifically, the MRI of the claimant's left ankle only revealed a minimal degree of plantar fasciitis. (Exhibit B11F/20.) Additionally, on multiple occasions the claimant described her foot and heel pain as only "slightly uncomfortable." (Exhibit B24F/7, 9, 11, 13.) An April 2010 orthopedics exam also revealed normal range of motion of the feet and ankles. (Exhibit B24F/2-4.) Further, throughout most of the relevant period, the claimant's podiatrist has stated she should "continue regular activities" with "full weightbearing" status. (B24F, B26F.) Since her recent foot surgery, the claimant has been told to continue with regular activities and is allowed to perform full weightbearing while wearing a surgical shoe. (Exhibit B34F/10, 13.) Moreover, the claimant's hypertension, GERD, and headaches all seem to be stable with treatment. (Exhibit B4F/8.)

The claimant's mental health impairments also appear to be improved with treatment. For example, in December of 2009, she reported feeling

better emotionally and getting along well with her significant other. (Exhibit B12F/22.) Shortly thereafter, in January of 2010, the claimant presented to her psychiatrist with adequate hygiene, intact cognition, a good mood, and normal motor activity. (Exhibit B14F/3.) In April 2010, the claimant was reportedly "doing well overall," and in May of 2010, she reported improvement in concentration and better conflict resolution abilities. (Exhibits B21F/3, B22F/3.) Other treatment notes also state the claimant has improved organization, no difficulties with sleeping, and improved levels of functioning. (Exhibits B25F/3. B27F/3-4, B28F/2.) During a January 2011 neuropsychiatric exam, the claimant had appropriate mood and affect, normal thought content, appropriate judgment and insight, and normal attention and concentration. She also displayed the ability to recall both recent and remote events. (Exhibit B32F/8.) Additionally, other medical providers regularly describe the claimant as pleasant and cooperative. (Exhibits B24F/5, B26F/17.)

In addition to the objective evidence of record, the undersigned has considered several other factors in determining the claimant's residual functional capacity. These factors include her daily activities; the location, duration, frequency, and intensity of her symptoms; factors that precipitate and aggravate her symptoms; the type, dosage, effectiveness, and side effects of medications; other types of treatment or measures taken to relieve symptoms; and any other factors concerning her limitations and restrictions. (SSR 96–7p.)

The claimant's daily activities have not been limited to the extent one would expect of a disabled individual. For example, she is the primary caretaker for her young, disabled daughter, which requires her to care for her daughter's personal hygiene, help with homework, and get her off to school each day. (Exhibit B4E, Hearing Testimony.) Additionally, the claimant enjoys hobbies such as arranging flowers, sewing, and other craft projects. In fact, in July of 2010, the claimant told her psychiatrist that she was keeping busy with crafts. (Exhibit B21F/2.)

The record also suggests that the claimant has not been entirely compliant with medical treatment. For example, she underwent a course of physical therapy for her heel spur and plantar fasciitis in late 2009. However, she cancelled or failed to show up for nearly half of her prescribed sessions. (Exhibit B15F/5.) This suggests the claimant's symptoms may not be as limiting as she has alleged.

In addition, the claimant has given several inconsistent statements in connection with her claim. For example, at hearing, the claimant first testified she is limited to standing for 30 minutes at one time. However, later in the proceedings, she testified she is able to mow her lawn, pick-up sticks, and do other yard work for up to 45 minutes at one time. (Hearing testimony.) Further, in her Function Report, the claimant reported she was completely unable to perform yard work. (Exhibit B4E.) While such inconsistencies may not be the result of a conscious decision to mislead, they do suggest information provided by the claimant many not be entirely reliable.

A review of the claimant's work history also reveals that she worked only sporadically prior to the amended alleged onset date. In fact, the last time the claimant engaged in substantial gainful activity was in 1997, well before her original alleged onset date as well as the amended alleged onset date. (Exhibit B7D, Hearing Testimony.) This raises a question as to whether the claimant's continued unemployment is actually due to her severe impairments.

(R. 20-22.) Here, the administrative law judge properly considered plaintiff's allegations concerning her limitations in addition to her treatment records, daily activities and employment history. He concluded that her allegations were only partially credible and formulated a residual functional capacity incorporating her allegations to the extent he found them credible.

For the reasons stated above, the Magistrate Judge RECOMMENDS that this case be REMANDED to allow the administrative law judge to consider Dr. Fierman's opinion.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


 s/Mark R.  Abel
United States Magistrate Judge